IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| JAMES KELLIHER,<br><br>        Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY,<br><br>ERIK A. HOOKS, in his official capacity as Secretary of the North Carolina Department of Public Safety,<br><br>KENNETH LASSITER, in his official capacity as Director of Prisons for the Division of Adult Correction and Juvenile Justice of the North Carolina Department of Public Safety,<br><br>JOHNNY HAWKINS, in his official capacity as Administrator of Nash Correctional Institution,<br><br>and<br><br>BETTY BROWN, in her official capacity as Director of Chaplaincy Services for the Division of Adult Correction and Juvenile Justice of the North Carolina Department of Public Safety,<br><br>        Defendants. | Case No. 5:16-CT-03250-BO<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

Plaintiff James Kelliher ("Plaintiff"), by counsel, submits this Second Amended Complaint and alleges as follows:

## NATURE OF ACTION

1. Plaintiff is a sincere adherent to the faith of the Lutheran Church-Missouri Synod. He files this civil action to redress violations of his rights under the First Amendment's Free

Exercise Clause and under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. Specifically, Defendants placed an unconstitutional and substantial burden on the practice of Plaintiff's religious beliefs—a burden not justified by any compelling government interest—by, among other things, prohibiting Plaintiff from (1) meeting with his pastor on a weekly basis; (2) consulting the Lutheran Hymnal and Sunday Sermon pamphlet at visitations with his pastor; and (3) partaking in the sacramental wine at the Lord's Supper.

**PARTIES**

2. Plaintiff James Kelliher is a prisoner of the state of North Carolina, in the custody of the Division of Adult Correction and Juvenile Justice (the "Division") of the North Carolina Department of Public Safety. Plaintiff is currently incarcerated at the Division's Nash Correctional Institution ("Nash"), and his mailing address is James Kelliher, #0830958, P.O. Box 600, Nashville, North Carolina 27856. At all times relevant to this action, Plaintiff has been, and is, a sincere adherent to the faith of the Lutheran Church-Missouri Synod.

3. Defendant the North Carolina Department of Public Safety (the "Department" or "DPS") is a legal subdivision of the State of North Carolina created by the North Carolina General Assembly. The Department is empowered to act through its officials, employees, and divisions to, among other things, oversee, regulate, and maintain North Carolina's correctional system.

4. Defendant Erik A. Hooks is the Secretary of the Department. He is legally responsible for the overall operation of the Department. He is sued solely in his official capacity.

5. Defendant Kenneth Lassiter is the Director of Prisons for the Division. He is legally responsible for the overall operation of the Division and each institution under its jurisdiction, including Nash. He is sued solely in his official capacity.

6. Defendant Johnny Hawkins is the Administrator of Nash. He is legally responsible for the operation of Nash and for the welfare of all Nash inmates. He is sued solely in his official capacity.

7. Defendant Betty Brown is the Director of Chaplaincy Services for the Division. She is responsible for addressing North Carolina prisoners' religious issues and for facilitating prisoners' religious activities. She is sued solely in her official capacity.

8. At all times mentioned in this complaint, each defendant acted under the color of state law.

## JURISDICTION AND VENUE

9. The Court has federal question subject matter jurisdiction over the Plaintiffs' claims regarding violations of the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, pursuant to 28 U.S.C. § 1331.

10. The Court also has federal question subject matter jurisdiction, pursuant to 28 U.S.C. § 1343(a)(3), over the Plaintiffs' claims regarding the deprivation, under color of State law, of rights secured by the First and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

11. Venue lies in this district under 28 U.S.C. § 1391 because all of the events giving rise to the claims herein occurred in this District and the Defendants are subject to personal jurisdiction in this District as of the commencement of this action.

## STATEMENT OF FACTS

12. Plaintiff was confirmed as a Missouri Synod Lutheran on January 10, 2007, by Pastor Tod Rappe at Alexander Correctional Institution in Taylorsville, North Carolina.

13. Plaintiff follows Martin Luther's teachings, as explained in the Large Catechism, concerning the Ten Commandments, the Apostle's Creed, the Our Father, Baptism, and the Sacrament of the Altar, which includes the Lord's Supper (also referred to as Holy Communion).

14. As part of the Lord's Supper, Plaintiff sincerely believes in consubstantiation and believes he is commanded to partake of it weekly (at a minimum) to receive the forgiveness of sins, and to practice Christianity in accordance with his beliefs.

15. The Large Catechism instructs that the Lord's Supper be taken with wine as the Holy Bible commands.

16. The Large Catechism provides questions and instructions regarding the Sacrament of the Alter, including:

> Now what is the Sacrament of the Altar?
>
> **It is the true body and blood of our Lord Jesus Christ, in and under the bread and wine which we Christians are commanded by the Word of Christ to eat and to drink.** And as we have said of Baptism that it is not simple water, so here also we say the Sacrament is bread and wine, but not mere bread and wine, such as are ordinarily served at the table, but bread and wine comprehended in, and connected with, the Word of God.

Martin Luther, *The Large Catechism* 71 (emphasis added).

17. Plaintiff sincerely believes, and Lutheran teaching supports his belief, that substituting wine for grape juice or other modern substitutes is viewed as an impermissible innovation that calls into doubt whether the instructions of Jesus Christ are being followed. *See Theology and Practice of the Lord's Supper Part I: A Report of the Commission on Theology and Church Relations of the Lutheran Church Missouri Synod* at II.B.2.b (May 1983) ("The substitution of grape juice raises the question of whether the Lord's instruction is being heeded.").

18. Reverend Christopher S. Esget, the Sixth Vice President of the Missouri Synod Lutheran Church, further confirmed Plaintiff's beliefs by letter sent on December 2, 2016, in which Reverend Esget stated:

> Frequent reception of Holy Communion (the Sacrament of the Altar) is an obligation of all our members. This is the official teaching of our denomination. Proper user of the Sacrament requires wine (grape wine with alcohol) administered by a pastor.
>
> James Kelliher is a member of the congregation of the Lutheran Church—Missouri Synod. Under the aegis of our church, Rev. Tod Rappe, a pastor in good standing in our church body, is ministering to him.

Dec. 2, 2016 Letter from Esget (attached as Exhibit 1).

19. Plaintiff was previously incarcerated by DPS at Alexander Correctional Institution, Wayne Correctional Institution, and Pender Correctional Institution.

20. In May 2016, Plaintiff was transferred from Alexander Correctional Institution to Nash at his request to be closer to his family.

21. From at least January 2010 until Plaintiff's May 2016 transfer to Nash, Pastor Rappe provided Plaintiff access to the Lord's Supper, Lutheran Hymnal, and the Sunday Sermon pamphlet during weekly visits to Plaintiff.

22. The Lutheran Hymnal, Sunday Sermon pamphlet (which contains weekly Gospel readings according to the liturgical calendar from which Pastor Rappe preaches), and Pastor Rappe's instructions, prepare Plaintiff to receive the Lord's Supper, and thus are necessary elements to the Sacrament of the Altar.

23. Pastor Rappe provides these services to other inmates in other North Carolina correctional facilities as well.

24. Until being transferred to Nash, Plaintiff was permitted to receive the Lord's Supper as administered by Pastor Rappe who consecrated the bread and wine, transforming the

bread into the Body of Jesus Christ, and transforming the wine into the Blood of Jesus Christ. Pastor Rappe was permitted to provide wafers as bread and wine, which was poured into a small plastic cup of about 0.5 ounce size.

25. Until Plaintiff was transferred to Nash, Pastor Rappe administered these services to Plaintiff weekly, and Plaintiff was never limited to only one clergy visit per month.

26. Pastor Rappe has been, and is, willing and able to administer these services to Plaintiff at Nash.

27. Upon transfer to Nash, Plaintiff was prohibited from partaking in sacramental wine, and Pastor Rappe's clergy visitations were limited to once a month. Further, Pastor Rappe was not permitted to bring the Lutheran Hymnal and Sunday Sermon pamphlet into Nash as these were deemed contraband.

28. On information and belief, Pastor Rappe spoke to Defendant Hawkins on May 27, 2016, after a visitation session with Plaintiff. At that meeting Defendant Hawkins informed Pastor Rappe that he would meet with an administrative board to discuss the situation regarding Plaintiff's practice of his religion.

29. At a later date, without explanation, Defendant Hawkins informed Pastor Rappe that Plaintiff would be denied weekly clergy visits, limiting Pastor Rappe's clergy visits to once a month.

30. Nash does not provide any services for Lutherans generally or to Missouri Synod Lutherans specifically.

31. Nash does not have a Chaplain on staff.

32. Plaintiff wrote to Defendant Hawkins on June 6, 2016, and again on June 20, 2016, to inform him of his sincere beliefs regarding the practice of his religion and the

importance of his request to partake in the Lord's Supper, including the sacramental wine, and to use the Lutheran Hymnal and Sunday Sermon pamphlet when practicing his faith.

33. Defendant Hawkins did not respond to Plaintiff's letters.

34. Plaintiff filed a an official grievance on July 11, 2016, and final decision—denying Plaintiff's requests for religious accommodation—was received on August 31, 2016. *See* Grievance No. 3710-2016-2CL-02106 ("July 2016 Grievance") (attached as Exhibit 2).

35. On August 30, 2016, Plaintiff filed an "Inmate Request for Religious Assistance Fact Sheet." *See* Inmate Request for Religious Assistance Fact Sheet (attached as Exhibit 3) ("Religious Assistance Fact Sheet").

36. In his Religious Assistance Fact Sheet Plaintiff stated that:

> The Sacrament of the Altar (Lord's Supper) is the point of contention so I'll focus on this key tenet. We receive, in the Lord's Supper, a great 'treasure': the forgiveness of sins. The whole Gospel is comprehended in this Sacrament and is offered to us through the Word, which promises that in and under the bread and wine we receive the body and blood that was sacrificed on the cross for our salvation. Those who believe the Words of promise receive the forgiveness this Sacrament promises. Luther urges Christians to receive the Sacrament frequently.

37. Further, also in his Religious Assistance Fact Sheet, Plaintiff explained his sincere belief regarding what occurs to those who do not partake of the Lord's Supper:

> Luther writes that the '[Devil] tries every trick and does not stay until he finally wears us out; so that we either renounce our faith or throw up our hands and put up our feet, becoming indifferent or impatient. [Some] pretend that it is enough to believe without it. For the most part, they go so far astray that they become quite brutish and finally despise both the Sacrament and God's Word. Nevertheless it must be known that people who deprive themselves of and withhold from the Sacrament for such a long time are not to be consecrated Christians.'

38. In response to Plaintiff's request for religious accommodation via his Religious Assistance Fact Sheet, the Department wrote to Plaintiff indicating that "it appears that you are being accommodated thru [sic] Christian services held on Sunday Mornings and the quarterly observance of the Lord's Supper/Holy Communion. NCDPS policy and procedure does not

-7-

Case 5:16-ct-03250-BO Document 19 Filed 09/08/17 Page 7 of 15

allow room for accommodations in the following requested areas: Inmate partaking in the consumption of alcoholic beverage (Sacramental Wine) and bringing in contraband items into the facility via approved visit(s) (Sunday sermon pamphlet, Lutheran Hymnal and Lord's Supper)." Sept. 20, 2016, Letter Regarding Religious Accommodation (attached as Exhibit 4).

39. Further, on October 4, 2016, Susan Addams, the Regional Chaplain for the Department acting under Department's authority wrote to Plaintiff to state that she found "this is an inappropriate use of the [Religious Assistance Fact Sheet]" and that the direction given to Plaintiff in the September 20, 2016 letter (Ex. 4) was correct. Oct. 4, 2016 Letter Regarding Submission of DC-572 (attached as Exhibit 5).

40. Chapter H, Section .0106(h), of the Department's Religious Services Policy provides that:

> Sacramental wine may be approved for religious services. Requests must be made to the facility chaplain or other designated staff and will be reviewed on a case-by-case basis. Only the religious official leading the rite may consume alcohol. The Director of Chaplaincy Services shall maintain a list of faith groups approved for the use of sacramental wine. Inmates are not allowed to consume ANY alcoholic beverages while in the custody of the Department of Public Safety.

41. This provision, in its current form, was issued on September 1, 2016, superseding a substantially similar policy that issued on July 7, 2016, and was signed by George Solomon, who was then the Department's Director of Prisons and is the predecessor of Defendant Lassiter.

42. In addition, the Department "recognizes the important roll [sic] that the clergy has on an inmate's rehabilitation. When a clergy visit is scheduled, the facility should allow the visit to be conducted in a private setting if possible. The clergy visit should not be counted as the standard one visit per week that inmates are allowed." Chapter D, Section .0203(b), "Visitors," State of North Carolina Department of Public Safety Prisons, Policy & Procedures.

43. On the Department's website, under Chaplaincy Services, the Department recognizes that among its administrative responsibilities is to "address religious issues of all faiths" and includes in its mission statement its obligation "[t]o serve as a consultant for management regarding inmate requests for religious services and other issues[.]" Chaplaincy Services, NC DPS, *available at* https://www.ncdps.gov/Adult-Corrections/Prisons/ Programs/Chaplaincy-Services (last visited on Aug. 21, 2017).

44. In order to gain clarity on a policy that diverged with Plaintiff's personal experience of being able to receive sacramental wine in other North Carolina correctional institutions, Plaintiff contacted Bobbie Richardson, the Representative for the seventh district of North Carolina in the North Carolina House of Representatives. Rep. Richardson responded, stating that her office had inquired with the Department regarding Plaintiff's issues and history. According to Rep. Richardson,

> Per [Defendant] Brown's inquiry, the facilities where inmate Kelliher had been located, all stated they did not allow Rev. Rappe to give communion to the inmate during visitation. It was later discovered that while at Pender Correctional Institution, a Temporary Chaplain did allow Rev. Rappe to give communion to inmate Kelliher during visitation. The number of times communion was given is not known. This action was not in compliance with NCDPS Visitation or Religious Policy. The Temporary Chaplain was advised this action was not in compliance with policy. The chaplain was advised this action should not have occurred.

June 8, 2017 Letter from Richardson (attached as Exhibit 6).

45. As part of this correspondence, Defendant Brown admitted that a Roman Catholic priest is permitted to celebrate mass, during which prisoners are permitted to partake of sacramental wine. *See id.*

46. It is Plaintiff's sincere belief that Defendant's prevention of Plaintiff's ability to receive the Lord's Supper regularly, through weekly visits from Pastor Rappe, and consultation

with the Sunday Sermon pamphlet and the Lutheran Hymnal, amounts to a prevention of the practice of his religion and a prevention of his receiving forgiveness of sins—imperiling his soul.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

47. Plaintiff has exhausted all available administrative remedies.

48. On July 16, 2016, DPS received Plaintiff's July 2016 Grievance (Ex. 2), which was filed on July 11, 2016.

49. In the July 2016 Grievance, Plaintiff stated that DPS's "state-wide policy banning inmates from receiving the 'Lord's Supper' (bread [and] wine) clearly infringes on [his] ability to practice [his] religion as a Missouri Synod Lutheran." *Id.*

50. On that same day Plaintiff received a response signed by Angelo Wiggins stating that "DPS Policy prohibit visiting clergy from bringing sacraments or the Lord's Supper into facility. Base [sic] on all facts no further action is needed or necessary." *Id.*

51. On appeal to Defendant Hooks, Secretary of the Department, Plaintiff received a response signed by Vivian L. Brake on July 22, 2016, stating that "I have reviewed the Step #1 response regarding your complaint. It appears that your complaint has been appropriately addressed in accordance to DPS policy. No further action required at this time." *Id.*

52. On July 25, 2016, in a "Findings and Disposition Order" signed by Reginald R. Mewborn, Inmate Grievance Examiner, the Department stated that an investigation of Plaintiff's complaint was conducted, and that staff "concluded that the inmate has not been treated unfair or outside the scope of correctional policies and procedures." *Id.* Mr. Mewborn stated that, based upon his review, "there is no supporting evidence that staff has violated any applicable policy. Accordingly, this grievance must be dismissed." *Id.*

53. Thereafter, Plaintiff wrote to Defendant Betty Brown, the Department Chaplain on August 22, 2016. *See id.* Plaintiff explained that he had received the Lord's Supper at three

-10-

Case 5:16-ct-03250-BO Document 19 Filed 09/08/17 Page 10 of 15

other North Carolina correctional facilities, and reiterated that participation in the Lord's Supper is a necessary and central tenet of his faith. *See id.* No response was ever received.

54. Also on August 22, 2016, Plaintiff wrote to George Solomon (then DPS's Director of Prisons and predecessor o Defendant Lassiter) describing the July 2016 Grievance response and requesting a written copy of the Department's policy concerning clergy visitation and sacramental wine. *See id.* No response was ever received.

55. Also on August 22, 2016, Plaintiff wrote to Mr. Mewborn regarding Mr. Mewborn's review of Plaintiff's July 2016 Grievance. *See id.* In light of Plaintiff's previous participation in the Lord's Supper at three other North Carolina correctional facilities, Plaintiff expressed his disbelief in the existence of a policy that prohibits such activity. *See id.* Plaintiff again requested the policy regarding clergy visitation and sacramental wine. *See id.*

56. On August 31, 2016, Ina M. Hinton, responding from the Inmate Grievance Resolution Board, wrote to acknowledge Plaintiff's "disagreement with the Grievance Examiner's decision related to your grievance appeal." Ms. Hinton stated that "[t]his issue has been addressed at every level of the Administrative Remedy Procedure. Therefore, you have exhausted your administrative remedies. If you continue to have concerns regarding this issue, you may pursue your concerns through other avenues." *See id.*[1]

---

[1] Despite the explicit exhaustion of Plaintiff's remedies, Plaintiff took further action by filing another grievance on September 14, 2016. *See* Grievance No. 3710-2016-2CU-02223 (attached as Exhibit 7). This grievance was also denied and Plaintiff was encouraged to attend non-denominational Christian worship services, and was told that visitors are only allowed to bring car keys and identification when visiting.

## COUNT I
## VIOLATION OF THE RELIGIOUS LAND USE AND
## INSTITUTIONALIZED PERSONS ACT (42 U.S.C. § 2000cc ET SEQ.)

57. Plaintiff incorporates by reference, as if fully set forth herein, the facts and allegations set forth in each of the preceding paragraphs of this complaint.

58. Plaintiff is a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997), as incorporated by reference in RLUIPA (42 U.S.C. § 2000cc-1).

59. It is Plaintiff's sincerely held belief that partaking in sacramental wine as part of the Lord's Supper, visiting with his pastor on a weekly basis, and consulting the Lutheran Hymnal and Sunday Sermon pamphlet, are essential parts of the practice of his Missouri Synod Lutheran faith.

60. Plaintiff's partaking in sacramental wine as part of the Lord's Supper, visiting with his pastor on a weekly basis, and consulting the Lutheran Hymnal and Sunday Sermon pamphlet, are "religious exercise" as defined by 42 U.S.C. § 2000cc–5(7)(A).

61. For more than a year, since Plaintiff was transferred to Nash, Defendants have deprived Plaintiff of his right to the free exercise of religion, as secured by RLUIPA.

62. Defendants have unlawfully imposed, and continue to unlawfully impose, a substantial burden on Plaintiff's religious exercise, including by prohibiting Plaintiff from: (1) partaking in the sacramental wine at the Lord's Supper, (2) meeting with his pastor on a weekly basis, and (3) consulting the Lutheran Hymnal and Sunday Sermon pamphlet.

63. Substitution of grape juice for wine is a replacement that does not comport with Plaintiff's sincerely held religious beliefs, and thus amounts to a substantial burden on Plaintiff's practice of his religious beliefs.

64. Likewise, as Lutherans are strongly encouraged to partake of the Lord's Supper as often as possible, Defendants' limitation of Plaintiff's visitation with his pastor to once a month—and the additional limitation on the religious texts Plaintiff's pastor may bring to visitation—amounts to a substantial burden on Plaintiff's practice of his religious beliefs.

65. The substantial burden that Defendants impose by prohibiting Plaintiff from partaking in the sacramental wine at the Lord's Supper, and meeting with his pastor on a regular (more than monthly) basis, does not serve a compelling governmental interest.

66. The substantial burden that Defendants impose by prohibiting Plaintiff from: (1) partaking in the sacramental wine at the Lord's Supper, (2) meeting with his pastor on a weekly basis, and (3) consulting the Lutheran Hymnal and Sunday Sermon pamphlet, is not the least restrictive means of furthering any governmental interest, whether compelling or not.

67. The substantial burden Defendants have imposed on Plaintiff's religious exercise is imposed in a program or activity that receives federal financial assistance.

68. The substantial burden Defendants have imposed on Plaintiff's religious exercise affects, or removal of this substantial burden would affect, commerce with foreign nations, among the several states, or with Indian tribes.

### COUNT II
### Violation of the United States Constitution Free Exercise of Religion:
### First and Fourteenth Amendments (42 U.S.C. § 1983)

69. Plaintiff incorporates by reference, as if fully set forth herein, the facts and allegations set forth in each of the preceding paragraphs of this complaint.

70. Plaintiff's religious beliefs are burdened by Defendants' prohibition of Plaintiff from: (1) partaking in the sacramental wine at the Lord's Supper, (2) meeting with his pastor on a weekly basis, and (3) consulting the Lutheran Hymnal and Sunday Sermon pamphlet, as it is

precludes Plaintiff's participation in the Lord's Supper—a central tenet of Plaintiff's Missouri Synod Lutheran faith.

71. Defendants have a constitutional duty to accommodate Plaintiff's sincerely-held religious beliefs. Defendants' conduct, however, constitutes a failure to give reasonable accommodation to Plaintiff's sincerely-held religious beliefs.

72. Defendants' conduct constitutes a custom, policy, or practice of the Department.

73. Defendants' policy prohibiting prisoners from partaking in sacramental wine (Policies & Procedures, Chapter H, Section .0106(h)), policy regarding contraband, and policy of limiting clergy visits to once a month, violate the Civil Rights Act of 1866, 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in his favor and against Defendants on all counts asserted herein and grant the following relief:

(a) a preliminary and permanent injunction requiring Defendants to do the following:

    i. permit Plaintiff visitation with clergy on a weekly basis;

    ii. permit clergy to bring the Lutheran Hymnal and Sunday Sermon pamphlet to visitations with Plaintiff; and

    iii. permit clergy to administer the Lord's Supper, using less than one fluid ounce of sacramental wine, to Plaintiff at visitations.

(b) a declaration that Defendants' failure to allow the foregoing is in violation of RLUIPA and of the First and Fourteenth Amendments to the United States Constitution;

(c) an award to Plaintiff of the full costs and attorneys' fees arising out of this litigation; and

(d) such other, further, and additional relief as this Court deems just and appropriate.

-14-

Case 5:16-ct-03250-BO   Document 19   Filed 09/08/17   Page 14 of 15

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues of fact and damages stated herein.


Dated: September 8, 2017

KING & SPALDING LLP

*/s/ Chelsea Corey*
Chelsea Corey, NCSB No. 48838
100 North Tryon Street, Suite 3900
Charlotte, North Carolina 28202
E-mail: ccorey@kslaw.com
Telephone: (704) 503-2575
Telefax: (704) 503-2622

and

Kevin O'Brien
1180 Peachtree Street, NE
Atlanta, Georgia 30309
E-mail: kobrien@kslaw.com
Telephone: (404) 572-2442
Telefax: (404) 572-5100

*Attorneys for Plaintiff James Kelliher*